IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LILLIAN MELENDEZ<br>Plaintiff, | : | |
| VS. | : | C.A. No.: 05-1535 |
| AMERIQUEST MORTGAGE COMPANY<br>Defendant | : | |

**PLAINTIFF'S OBJECTION TO THE DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Now comes the Plaintiff in the above-entitled matter and objects for cause to Defendant's Motion For Protective Order. A Memorandum of Law in support of Plantiff's Objection is attached herewith.

**WHEREFORE**, Plaintiff prays that the Defendant's Motion For Protective Order be denied.

Respectfully submitted,

Christopher M. Lefebvre #4019
P.O. Box 479
Pawtucket, RI 02879
(401) 728-6060
(401) 728-6534 Fax

**CERTIFICATION**

I, the undersigned, hereby certify that on the 13th day of January, 2006 I did send a copy of the within OBJECTION by regular mail, postage prepaid, to William M. Walsh, Esq., Law Offices of James J. Caruolo, 33 College Hill Road, Building 15C, Warwick, RI 02886 and Michael F. Drywa, Esq., John Reilly & Associates, Summit West, Suuite 330, 300 Centerville Road, Warwick, RI 02886.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LILLIAN MELENDEZ<br>Plaintiff, | : | |
| VS. | : | C.A. No.: 05-1535 |
| AMERIQUEST MORTGAGE COMPANY<br>Defendant | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ~~MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND~~ IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**FACTS AND TRAVEL OF THE CASE:**

The Plaintiff's action seeks redress against Ameriquest Mortgage Company ("Ameriquest") for violation of the Truth in Lending Act, 15 U.S.C.§1601 et seq. ("TILA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226. Plaintiff alleges that on or about November 2, 2004 she obtained a loan from Ameriquest, a creditor as defined in TILA. Ameriquest is what is commonly known as a "subprime" lender, targeting persons who have or who believe they have impaired credit.

In connection with the transaction, Plaintiff received a note in the principal amount of $220,000 a mortgage, a Truth In Lending statement and several notices of right to cancel. Plaintiff alleges that copies of her right to cancel delivered to her were defective in that they did not specify the date of the transaction and the date of the expiration of the rescission period. The transaction was subject under the law to the right to cancel.

On or about January 29, 2005 the Plaintiff exercised her extended right to rescind the loan for violations of TILA and a notice of rescission was sent to Ameriquest which in turn denied the

Plaintiff's request to rescind the mortgage. Plaintiff seeks rescission of the mortgage and an award statutory damages as a result of Defendant's failure to give Plaintiff clear and conspicuous notice of her right to cancel, in violation of the law.

Ameriquest admitted that it was a creditor under the applicable law but denied that the copies of the notice of right to cancel actually delivered to Plaintiff were defective. On November 18, 2005 Plaintiff conducted the deposition of Michael Lima, a licensed attorney who conducted real estate closings as an independent contractor, including that of Plaintiff, for Tapalian & Tadros, attorneys for Ameriquest. He testified that he had been involved in approximately nine hundred (900) Ameriquest refinance transactions during 2003 (T-41); furthermore, that he had a standard practice in how he would conduct an Ameriquest refinance transaction (T-7,8) including that of Plaintiff (T-15); also, that he was in possession of personal records regarding the Ameriquest refinancing transactions he had closed as an independent contractor for Tapalian & Tadros.

Attorney Lima also testified that at each and every Ameriquest closing he would have two packets of documents. One set would be executed by the consumer. The other set, which in this case was already placed in a folder containing an Ameriquest logo, would be given to the consumer. Mr. Lima admitted that he would not have examined the documents contained in the consumer's packet of closing documents.

Included in the packet of documents executed by the borrower and ultimately retained by the closing agent for the lender, he said, would be three right to cancel forms compromised of a lender copy and two borrower copies. Mr. Lima testified that it was his standard practice to hand write in the dates relative to the right of rescission on the Ameriquest copy and then on the two borrower copies and have the borrower sign and date the forms in his presence and then give them to the borrower (T-21).

This contention, that is, giving the borrower two (2) completed copies of the right to cancel in addition to the incomplete copies in the borrower's packet, is the central hotly contested issue is this case.

In sum, of all Ameriquest closings he had conducted, the consumer would have incomplete and undated rights to rescission documents in their packet but would also have received two of the attorney's own right to rescission documents with the right to rescission dates written on the documents (T-23, 54). He denied the Plaintiff's assertion that she was not given any extra right to cancel forms but for those uncompleted forms contained in her closing package.

Attorney Lima testified that he was in personal possession, at his residence, of records identifying the name of borrowers and the mortgage company that the borrower financed with, along with the date of refinance for all transactions that he had conducted since he started working as an independent contractor for Tapalian & Tadros (T-27) and that he would voluntarily produce any said compilations of data by December 17, 2005 (T-32, 58). He failed to do so and, through his attorney, stated that his due and diligent search failed to produce any of the subject documents and records. A copy of the correspondence from attorney Michael F. Drywa, Jr. is attached hereto as Exhibit "A."

In that regard, it is important to note that, during the course of his deposition, attorney Lima gave the following answers to the stated questions:

Q: Will you voluntarily produce a copy of that list of the names and addresses of the Ameriquest refinance transactions that you have been involved in since you began your relationship with Tapalian?

A: I should be able to find where exactly in my residence the file is, yes. (T28-29);

Q: So basically you may keep like weekly sheets, weekly time logs, almost?

A: Correct. (T32);

Q: So you may not have a complete set, but you might have 80 percent of the clients, you might have 50, you might have 90?

A: Correct, exactly. (T32)

Q: And those documents would be in Seekonk?

A: In my possession. (T32)

Q: Your possession, not in the possession of Tapalian?

A: Correct. (T32)

In response to the rather sudden loss of records of the Ameriquest agent, Plaintiff propounded a Request For Production on December 15, 2005 which requested that Defendant produce the name and address of all borrowers who refinanced a mortgage on their principal residence with Ameriquest Mortgage Co. during the one (1) year period prior to April 14, 2005 (date of filing of the instant lawsuit), who's closing was conducted by any officer or agent of Tapalian & Tadros, PC. Plaintiff also filed a Notice of Deposition of Ameirquest pursuant to F. R. Civ. P. 30(b)(6). A copy of the Request For Production is attached hereto as Exhibit "B." A copy of the Notice of Deposition is attached hereto as Exhibit "C." Defendant filed an Objection to the Request for Production and filed a Motion For Protective Order regarding the deposition of Ameri-quest. Plaintiff filed an Objection to Defendant's Motion for Protective Order and a Motion To Compel Responses to the Request For Production of Documents.

**ARGUMENT AND LAW**

Plaintiff's motion to compel production of documents should be granted because the

request is relevant and reasonably calculated to lead to the discovery of admissible evidence. Defendant's Motion for Protective Order should be denied for the same reason.

Even where a plaintiff has executed an acknowledgment of receipt of accurate disclosures, such a statement simply raised "a rebuttable presumption" and the jury must ultimately decide which documents were in fact received at the time of closing. Davison v. Bank One Home Loan Services, 2003 WL 124542 (D.Kan. 2003). *Accord*, Cooper v. First Gov't Mortgage & Investors Corp., 2002 WL 31520158, at *11-13 (D.D.C. Nov. 4, 2002) (presumption rebutted by borrower's testimony); Hanlin v. Ohio Builders & Remodelers, Inc., 212 F.Supp. 2d 752 (S.D. Oh. 2002) (same); Stone v. Mehlberg, 728 F.Supp. 1341 (W.D.Mich. 1989) (same); In re: Rodrigues, 278 B.R. 683 (Bkrtcy. D.RI 2002) (same); In re: Williams, 2332 B.R. 629 (Bkrtcy. E.D.Pa. 1999) (same), *aff'd in relevant part*, 237 B.R. 590, 594-95 (E.D. Pa.1999). (rebuttable presumption of receipt that was created by acknowledgment of receipt of TILA disclosure statement was rebutted by "testimony that plaintiff left the attorney's office without the TILA disclosure form and did not actually receive it in the form she could keep until [later]."). In the within case, Plaintiff is expected to testify that she left the closing without completed copies of her right to cancel;

Defendant will most likely produce a copy of a completed right to cancel with a signed acknowledgment that the Plaintiff received two copies of said document. This is a classic case of "he said, she said," so-to-speak. The presumption of the receipt of completed documents can be rebutted by the testimony of the Plaintiff and the testimony of the closing agent. Since the closing agent, by his own questionable failure to produce the documents

which would support his deposition testimony, leaves Plaintiff to her proof otherwise. Pattern and practice evidence of the closing agent/attorney is relevant to the core issue of the case. Therefore, Plaintiff must be allowed to seek evidence to support her claim by other means including obtaining possible testimony of other consumers that had their closing conducted by Attorney Lima.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit ..." 15 U.S.C. §601(a). "Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v.Ocwen Federal Bank, 523 U.S. 410 (1998). Most importantly as it relates to the within case, TILA establishes a statutory right of rescission whenever a mortgage loan is given on a borrower's principal dwelling which extends until "midnight of the third business day following consummation [of the loan], delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). Pursuant to TILA regulations, a creditor is required to "deliver two copies of the notice of the right to rescind" which must "be on a separate document that identifies the transaction" and "clearly and conspicuously" discloses the consumer's right to rescind the transaction. 12 C.F.R. § 226.23 (b)(1). If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation. *See* 12 C.F.R. § 226.23(a)(3). Reese v.Hammer Financial Corp., 1999 WL 1101677 (U.S.D.C., N.D .Ill. 1999).

Especially in the area of mortgage loans on home residences, Court have imposed a standard of strict liability under the TILA where a lender has violated any of its provisions. *See, e.g.,* Griggs v Provident Consumer Discount Co., 680 F.2d 927, 930 (3rd Cir.1982) ("[The TILA] mandates the disclosure of certain information in financing agreements and enforces that mandate by 'a system of strict liability in favor of consumers who have secured financing when [the] standard[s] [are] not met.'") (quoting Thomka v. A.Z. Chevrolet, 619 F.2d 246, 248 (3rd Circ. 1980); 15 U.S.C. §§ 1640(a)). Courts impose such strict liability even where such violations are "merely technical" or "minor." *See, e.g.,* Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65,67 (4th Circ.1983); Jenkins v. Landmark Mortgage Corp., 696 F.Supp. 1089, 1095 (W.D.Va.1988); Solis v. Fidelity Consumer Discount Co., 58 B.R. 983, 986 (E.D. Pa. 1986). For example, failure to fill in the expiration date of the recission form violates the TILA and entitles the borrower to retain the right to rescind the transaction. *See, e.g.,* Williamson vs. Lafferty, 698 F.2d 767, 768-69 (5th Cir. 1983); Mayfield v. Vanguard Savings & Loan Association, 710 F.Supp.143, 145-45 (E.D. Pa. 1989); Aquino v. Public Finance Consumer Discount Co., 606 F.Supp. 504, 507 (E.D. Pa. 1985); New Maine National Bank v. Gendron, 780 F.Supp. 52, 57 (D.Me. 1991).

The standard practices followed by Attorney Lima relative to the conduct of Ameriuest transactions as testified to in his deposition constitute "habit and routine" admissible under Rule 406 of the Rules of Evidence and, thus, constitute a permissible Discovery inquiry. In a declaratory judgment action by an insured seeking a determination that an insurance company failed to offer increased coverage options as required by statute, an insurance agent's

testimony regarding his routine office practices, including the specific guidelines he followed in offering customers increased coverage options for uninsured motorist nsurance, was found to be admissible, since habit testimony, whether corroborated or not, is always relevant to prove conduct of a person or business organization. Taruc v.State Farm Mut. Auto Ins. Co., 218 Ill. App.3d 51, 161 Ill Dec 7,578 NE2d 134 (1st Dist.1991).

In the following case, evidence of office routines was held admissible under Rule 406 of the Uniform Rules of Evidence as evidence of habit or routine practices. A data processing systems manager's testimony regarding the processing of written confirmations of securities transactions, that the confirmations were stuffed in window envelopes, the envelopes were run through a machine which sealed them and placed stamps on them, and at the end of the day the envelopes were hand-carried to the post office and mailed, was held admissible in Swink & Co. v. Carroll McEntee & McGinley, Inc., 266 Ark. 279, 584 SW2d 393, 27 UCCES 239 (1979). The court said that there was no requirement that the mailing of the confirmation be shown by the person who performed that part of the procedure, and that the evidence was sufficient to present a jury question on delivery and receipt of the confirmation.

The Plaintiff's Discovery requests go directly to the point as to whether Attorney Lima acted in conformity with habit. In State v. Iuli, 101 Haw. 196, 65 P.3d 1443 (2003), the court held that to determine whether a defendant has acted in conformity with habit, the evidence must be the regular practice of a person responding to a particular kind of situation, and, in this regard, the practice must be frequent, and it must be invariable or, at least, consistent; the habit must also be specific. Attorney Lima's habit in his conduct of

real estate closings on behalf of Ameriquest, satisfies all of those requirements by his own admission. Plaintiff's request for the identity of persons in similar situations to her own is calculated to lead to the discovery of evidence to rebut the affirmation that at each and every Ameriquest closing he would have two packets of documents which Ameriquest had already executed; that he would have the consumer sign both copies and then would give the consumer their complete packet, including three right to cancel forms, a lender copy and two borrower copies; that he would write the dates relative to the right to recission on the Ameriquest copy and then on the two borrower copies and have the borrower sign and date the forms in his presence and then give them to the borrower. All of Plaintiff's seven (7) areas of inquiry cited in its Notice of Deposition of Ameriquest go to the core issue in dispute in the case.

The relevant Discovery rule does not condition availability of discovery upon the likely admissibility of information sought so that if there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable, at least in the absence of some countervailing considerations. Bennett vs. LaPere, 112 F.R.D.136 (D.RI 1986). While Ameriquest has obvious concerns that Plaintiff will uncover other consumers whose rights were violated under federal law, that is no reason to deny Plaintiff access to information which is relevant to the core issue of her own case, to wit, whether Ameriquest failed to produce meaningful and accurate disclosures as mandated by the TILA. At the time of the Plaintiff's transaction, Attorney Lima was acting as the agent for the lender Ameriquest. (See Lima's signature on page five (5) of Closing Instructions which is attached hereto as Exhibit "D."). Since the agent for Ameriquest has

failed to produce documents which are relevant and material and would likely lead to discoverable evidence, Plaintiff has a right to go directly to the main source of said information, namely, Ameriquest.

Defendant's arguments in support of its objection to Plaintiff's motion to compel and Defendant's motion for a protective order are misguided. Fortunately, Defendant does agree that the issue in this case is whether or not the attorney who conducted the closing did in fact provide Plaintiff with the fully completed copies of the Notice of Right to Cancel. As such, and in light of the attorney's sworn testimony as to his habit and routine of providing fully completed copies of the Notice of Right to Cancel in all of his Ameriquest closings, Plaintiff is entitled to the identification of similarly situated persons so as to discover whether, in fact, they were provided with the documents. The requested information is readily available to Ameriquest.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion To Compel Production of Documents should be granted and Defendant's Motion for Protective Order should be denied.

Lillian Melendez
By Her Attorneys
CLAUDE LEFEBVRE
CHRISTOPHER LEFEBVRE, P.C.

Christopher Lefebvre

P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 fax

**CERTIFICATION**

I, the undersigned, hereby certify that on the 13th day of January, 2006 I did send a copy of the within OBJECTION by regular mail, postage prepaid, to William M. Walsh, Esq., Law Offices of James J. Caruolo, 33 College Hill Road, Building 15C, Warwick, RI 02886 and Michael F. Drywa, Esq., John Reilly & Associates, Summit West, Suite 330, 300 Centerville Road, Warwick, RI 02886.